[Ferguson v. The State.]

# Ferguson v. The State.

## Murder.

(Decided Feb. 7th, 1907. 43 So. Rep. 16.)

1. *Homicide; Proof of Conspiracy; Admissibility.*—The state relied on the existence of a conspiracy between the son, who did the actual shooting, and the accused to kill deceased, and it was competent to show in support thereof that prior to the killing accused stated that if his son should kill deceased, no more attention would be paid to it than if he killed a dog, and that he and his son were looking for deceasel, and wanted to be ready when he came.

2. *Criminal Law; Trial; Instructions.*—Where there was evidence tending to show a conspiracy between' the son and the defendant to kill deceased, the general affirmative charge was properly refused to defendant, although there was conflict in the testimony as to the conspiracy.

3. *Same; Appeal; Motion for New Trial; Review.*—This court cannot review the action of the trial court on a motion for a new trial in a criminal case.

4. *Same; Trial Instructions; Ignoring Evidence.*—Where there was evidence tending to show a conspiracy between defendant and his son to commit the homicide, an instruction predicating an acquittal of defendant on a reasonable doubt of his presence aiding and abetting his son, pretermitting, as it does, all reference to a conspiracy, is properly refused.

5. *Same; Instructions; Province of Jury.*—Where the evidence tended to show a conspiracy between the defendant and his son to commit the offense charged, instructions which withdrew from the jury all consideration of the question of conspiracy, are properly refused.

6. *Homicide; Manslaughter; Conspiracy to Commit.*—Parties may enter into conspiracy to commit manslaughter.

APPEAL from St. Clair Circuit Court.

Heard before Hon. JOHN PELHAM.

W. F. Ferguson was convicted of manslaughter in the first degree, and he appeals. The evidence for the state tended to show that, on the afternoon on which the kill-

ing occurred, Will Andrews and his mother were coming along the public road, approaching the store, dwelling, and barn of the defendant; that before they reached the store John Ferguson, the son of the defendant in this case, who was in defendant's store, got his gun, walked out of the store and up the road towards defendant's home, passed the house and went into the lot and into the stable; that, when Will Andrews was nearly opposite the lot gate, a shot was fired from the stable into which John Ferguson had gone, and that immediately after this shot was fired John Ferguson came out of the stable, went towards the pigpen, and when near the pigpen fired a second shot, which killed the defendant; that after killing him he came out of the lot, passed the dead man and his mother, and went to where his father was standing near the corner of the yard, and on the opposite side of the road, about 75 yards from the lot, where some words passed between him and Mrs. Andrews. The evidence tended to show that, when Mrs. Andrews and Will Andrews approached the store, John Ferguson was showing some customers some shoes, and the defendant in this case was lying on a box of corn with his head towards the door talking to a witness for the state; that the witness mentioned the fact that Will Andrews and his mother were coming towards the store, and immediately thereupon John Ferguson picked up his gun and went out the door, preceding Mrs. Andrews and Will up the road; that as soon as he passed the store this defendant got up out of the box of corn, went out, and closed the store door, whereupon the witness for the state asked him to let him go back in the store and get his hat. The defendant then opened the door and went in the store with the witness, and when he came out the second time he had a pistol in his hand, and went on up the road in the direction which his son had taken, and in the direction in which the dead man had gone. It was further shown that, owing to a rise in the road, one standing where defendant was could not see a person standing at or near the lot gate. It was further shown that the defendant went within 50 or 60 yards of where the killing occurred with his pistol in his hand, and had some conversation with the mother of the dead man.

The witness Washburn testified that on Monday before the killing, which occurred on Saturday afternoon, the defendant was at witness' house, and in a conversation stated to witness that he had succeeded in getting the trouble between John Ferguson, his son, and Will Andrews settled, until Saturday evening, when the old man came to the store and threw off on John, and made him mad again; that John would not talk to defendant about it now. Defendant further stated that if they pushed the thing on John, and John got into trouble, the defendant had 300 acres of land and would spend it all before John could be hurt, and that, if John were to kill one of them, no more attention would be paid to it than if he had killed a dog. The witness Tolbert testified that on Saturday afternoon, just one week before the killing, he rode up to the defendant's door, whereupon the defendant asked him if he had seen anything of Will Andrews as he came on. Witness replied he saw him up the road, and defendant said, "We are looking for him down here, and want to be ready for him when he comes; that, if we were to kill one of them, it wouldn't be any more than killing a dog."

INZER & MONTGOMERY, for appellant.—Before acts and declarations of one (where conspiracy is relied on for a conviction of the defendant), can be offered in evidence against such other or others the sufficiency of such formed design or purpose to commit the offense a foundation should be laid, by proof addressed to the court prima facie to establish the existence of such a conspiracy.—*McAnally v. The State,* 74 Al.a. 9; *Williams v. The State,* 81 Ala. 1; *Johnson v. The State,* 87 Ala. 39. The rule is that, all offenses admit of accessories except high treason because of the heinousness of the crime; unpremeditated offenses, such as manslaughter, etc., because from the very nature of the case there can be no accessory before the fact; and misdemeanors, because such offenses are too trivial.—*Scott v. The State,* 30 Ala. 503; *Elijah v. The State,* 35 Ala. 428; Clarke's Criminal Law, page 224.

ALEXANDER M. GARBER, Attorney General, and BORDEN H. BURR, Solicitor of the Seventh Judicial Circuit, for State.—Every question raised by the defendant has already been decided, adversely to him on the former appeals in this case.—*Ferguson v. The State*, 134 Ala. 63 and 141 Ala. 26. There was sufficient evidence to submit the question of conspiracy to the jury.—*Morris v. The State*, 41 So. Rep. 280; *Amos v. The State*, 83 Ala. 4; *Buford v. The State*, 132 Ala. 8; *Knight v. The State*, 41 So. Rep. 734.

McCLELLAN, J.—The case has on two former occasions engaged the attention of this court, and is reported in 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17, and 141 Ala. 26, 37 South. 448. The appellant appeals from a judgment of conviction of manslaughter in the first degree. The facts of this offense are shown by this record to be, for present purposes, in substantial accord with those presented on the former appeals, and reiteration is unnecessary. Errors are assigned, and we consider them seriatim.

The first, second, and third assignments are based, in the order stated, upon the action of the trial court in denying defendant's motion to exclude the testimony of witnesses Washburn and Tolbert on the ground, in substance, that it did not tend to show a conspiracy to grievously harm or kill the deceased; in denying defendant's motion to exclude all the testimony offered by the state on the ground that it did not tend to connect defendant with the killing of deceased; and, lastly, in refusing to defendant the affirmative charge. A conspiracy need not be established by direct proof of an express agreement between the conspirators. On the contrary, it may be shown by circumstantial evidence only. Nor is it necessary, to fix criminal responsibility upon co-conspirators participating in a criminal act, that it be committed or done in respect of time or place or manner according to any prearranged plan.—*Ferguson's Case, supra; Morris' Case,* 146 Ala. 66, 41 So. 280. Here the question of conspiracy vel non between defendant and his son was one for the jury, and the whole evidence introduced, including that of the witnesses Wash-

[Ferguson v. The State.]

burn and Tolbert sought to be excluded by the motions mentioned above, was properly submitted for the consideration of the jury; and, there being testimony tending to establish a conspiracy between the son and defendant, though met in conflict by testimony offered on the part of the defendant, the general affirmative charge for the defendant was well refused by the court.

The eighth assignment is predicated upon the overruling of the motion for a new trial. It has been repeatedly declared that such action, in a criminal case, is not reviewable.—*Thomas v. State,* 139 Ala. 80, 36 South. 734.

Assignments 4, 5, 6, and 7 relate to refused charges requested by defendant. Charge 2 was properly refused, because it predicates acquittal upon reasonable doubt of defendant's presence "aiding and abetting" the actual slayer, and pretermits in the hypothesis all reference to a conspiracy of which there was testimony tending to establish. Charge 4 was well refused, since it declares that there can be no conspiracy to commit manslaughter. This very question was considered and decided adversely to appellant, in 141 Ala. 20, 37 South. 448, on his appeal; and we reaffirm that decision. Charges 7 and 8 were also improper, because they took from the jury the question of conspiracy, and, besides, were invasive of the jury's province.

This disposes of all the assignments of error, and we have further investigated the record and find no error therein. So the judgment of the circuit court is affirmed.

Affirmed.

Tyson, C. J., and Dowdell and Anderson, JJ., concur.