### APLIN v. STATE.   (4 Div. 884.)

(Court of Appeals of Alabama.   April 8, 1924.)

**1. Conspiracy ⬅41—Conspirators liable for the acts of coconspirators.**

Each conspirator is answerable for the acts of his coconspirators, if the act be in furtherance of the conspiracy, or the matter a direct and proximate result of such conspiracy.

**2. Criminal law· ⬅423(1)—Wide latitude allowed in proving conspiracy to commit crime.**

A wide latitude is allowed in proving conspiracy to commit a crime, extending to everything said, done, or written by either of the conspirators in the execution or furtherance of their common purpose.'

**3. Criminal law ⬅369(3)—Evidence held admissible in murder prosecution, though tending to establish another and different crime.**

In a murder prosecution, where there was evidence tending to connect defendant with a conspiracy to kill deceased, testimony that on the day before the killing defendant with his coconspirator attempted to obtain a pistol, and what he said and did at that time in an effort to get the pistol, and threats made against deceased, and the fact that defendant and his coconspirator had liquor along which they were drinking, was admissible, though it tended to establish a different crime, since the two were connected tending to prove guilt, and the fact that the act proven was in itself a crime not being sufficient to exclude it.

**4. Criminal law ⬅368(3)—Testimony that mother of deceased was screaming at her home when the murder took place held admissible as res gestæ.**

In murder prosecution, where it had been testified that defendant and his coconspirator were seen coming up the road from the direction of the house of deceased with the "horse under speed" about the time of the killing, proof that the mother of deceased was screaming at her home where the murder took place, held admissible as res gestæ.

**5. Criminal law ⬅422(4)—Threats of conspirators to kill or injure deceased, made after entry into conspiracy, held admissible.**

In a murder prosecution, there being evidence of a conspiracy, threats by either of the conspirators to kill or injure deceased, if made after the conspiracy was entered into, were relevant and admissible against either party.

**6. Criminal law ⬅351(10)—Evidence that defendant tried to suppress testimony after homicide held admissible.**

In a murder prosecution, any effort made by defendant after the homicide to suppress testimony was admissible.

**7. Criminal law ⬅406(1)—Voluntary statement tending to an admission of guilt admissible in murder prosecution.**

In a murder prosecution, any statement made by defendant tending to an admission of guilt, if voluntarily made, was admissible.

**8. Homicide ⬅160—Evidence tending to show defendant's mental and physical preparation to kill decedent held admissible.**

In a murder prosecution, testimony that on the day of the killing defendant and his coconspirator had whisky, were drinking it, getting cartridges, and making threats against decedent, was relevant as tending to show a preparation both mental and physical to murder deceased.

**9. Criminal law ⬅363—Description of decedent and locus in quo, if unchanged from time of killing, 'are admissible as res gestæ.**

In a murder prosecution, description of the wound, clothing, size of the bullet, and full description of the locus in quo of deceased and place of difficulty, are admissible in evidence as res gestæ, wherever it appears that the conditions are not changed from what they were when the killing took place.

**10. Criminal law ⬅351(10)—Evidence that defendant after homicide attempted to and did trade pistol admissible as attempt to suppress evidence.**

In a murder prosecution, evidence that defendant owned a special pistol, and, that the shooting was done with such pistol, and that a few days after the homicide he traded it, was admissible against defendant as an attempt to suppress evidence.

**11. Homicide ⬅169(9) — Admission 'in evidence of advice given by witness to defendant prior to homicide, held erroneous.**

In a murder prosecution, while it was relevant for the state to prove that defendant and his coconspirator came to the home of witness and made threats against decedent, and had whisky, and that they tried to get a pistol, and that they had a pistol with them, it was error to permit such witness to testify as to part of his testimony in chief as to the details of the advice he gave defendant, none of which was relevant, except as a part of a conversation.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

12. Criminal law 🔑419, 420(1)—Homicide 🔑169(9)—Evidence that decedent had been told to stay away from store on day of homicide held irrelevant and hearsay.

Testimony of witness that decedent had been told by another to stay away from a store on day of homicide was irrelevant and inadmissible as hearsay, where the homicide was not at the store or near it.

13. Criminal law 🔑419, 420(1)—Testimony that witness had attempted to "rue back" after trading pistols with defendant upon hearing of homicide held inadmissible.

In a murder prosecution, testimony showing that, after the homicide, defendant had swapped pistols with witness, having been admitted as tending to prove an effort to suppress testimony, evidence that witness went to defendant to "rue back" after he had heard of the homicide, and the details of the conversation with reference to the "ruing back," was inadmissible as hearsay.

Appeal from Circuit Court, Covington County; W. L. Longshore, Judge.

Ed Aplin was convicted of manslaughter in the first degree, and appeals. Reversed and remanded.

Marcus J. Fletcher and E. O. Baldwin, both of Andalusia, for appellant.

It was error to admit evidence to the effect that witness wanted to rue his trade of pistols with defendant. Spicer v. State. 188 Ala. 9, 65 South. 972. Testimony of what a witness said to the defendant was inadmissible. McAnally v. State, 74 Ala. 9; Morris v. State, 146 Ala. 66, 41 South. 274.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

Counsel argue the questions raised, but without citation of authorities.

SAMFORD, J. The defendant in this case was indicted jointly with one Joel Wright on a charge of murder. Wright was convicted at a former term, of murder, and on the trial of this defendant the jury returned a verdict of manslaughter.

The actual killing was done by Joel Wright and the theory of the state was that Wright and this defendant entered into a conspiracy to kill the deceased. There are so many objections and exceptions to the introduction of testimony, as to render a detailed discussion of each exception impracticable, extending the opinion to undue lengths, without accomplishing any good purpose. A statement of the general rules governing such cases should be a sufficient guide for another trial.

[1-4] There being evidence tending to prove a conspiracy, each conspirator is answerable for the acts of each and all of his coconspirators, if the act be in furtherance of the conspiracy or the matter a direct and proximate result of such conspiracy. De Bardeleben v. Sellers, 17 Ala. App. 247, 84 South. 403. A wide latitude is allowed in proving conspiracy to commit a crime, extending to everything said, done, or written by either of the conspirators in the execution or furtherance of their common purpose. Morris v. State, 17 Ala. App. 126, 82 South. 574. In line with the foregoing, and there being evidence tending to connect the defendant with a conspiracy to kill the deceased and with aiding and abetting the crime, testimony that on the day before the killing defendant, with Joel Wright, attempted to obtain a pistol from Adam Florence, what defendant said and did at that time, and what Wright said and did, in an effort to get the pistol and the threats made against deceased, were all admissible in evidence as was also the fact that the defendant and Wright had liquor along of which they were drinking. The proof of one crime is not ordinarily admissible to establish another or a different crime, but where the two are connected, tending to prove guilt, the fact that the act proven is in itself a crime will not exclude it from evidence. It having been testified to that defendant and Wright were seen coming up the road from the direction of the house of deceased, with the "horse under speed," and about the time of the killing, it was competent to prove that he heard Mrs. Wright. the mother of deceased, screaming at her home, where the murder took place. This was a part of the res gestæ.

[5] There being evidence of a conspiracy, threats by either defendant or Wright, to kill or injure the deceased, if made after the conspiracy was entered into, are relevant and admissible against either party.

[6, 7] Any effort made by the defendant, after the homicide, in an effort to suppress testimony, is admissible, and a statement tending to an admission of guilt, if voluntarily made is admissible.

[8] The facts testified to by the witness McGhee, to the effect that defendant and Wright had whisky, were drinking whisky, getting cartridges, and making threats against the dead man, all on the day of the killing, were relevant, as tending to show a preparation, both mentally and physically, to murder the man whom they afterwards killed.

[9] We have so often held, as not to be now necessary to cite authority, that a description of the wounds, clothing, size of the bullet, and a full description of the locus in quo of the dead man and place of the difficulty is admissible in evidence, wherever it appears that the conditions are not changed from what they were when the killing took place. This is of the res gestæ.

[10] It was relevant for the state to show that defendant owned a .32 special S. and W. pistol, that the shooting was done with such

a pistol, and that a few days after the homicide defendant made an effort to dispose of this pistol, and that he did trade it; any testimony tending to show that defendant was making an effort to suppress evidence is admissible against him.

[11] On the other hand, it is not permissible to permit a witness to state the details of advice given by the witness to defendant, none of which is relevant, except as a part of a conversation, and then only on cross-examination, when the opposite party has brought out on direct examination a part of the conversation. It was relevant for the state to prove that defendant came to his home with Joel Wright, made threats against the dead man, had whisky of which they were drinking, and tried to get a pistol, and that they had a pistol with them, but it was error to permit the witness to testify as a part of his testimony in chief:

· "I said, 'Please take a nigger's advice, that is too bad to think about that, and then Mr. Joel, think about your wife and little babies and how nice they are and then about your old Mama and that is your brother,' and I said to Mr. Aplin, 'You think about your Mama and Papa and how nice they are.'"

The foregoing statement tends to prove no fact, to explain no act of defendant.

[12] The testimony of state's witness Earn Hogg that Herbert Broadie had told him to tell John Wright, deceased, to stay away from the store on the day of the homicide, was irrelevant and inadmissible. The homicide was not at the store or near it. The evidence was hearsay.

[13] In the examination of the state's witness Mack Curry, the state was allowed much latitude. To prove by this witness that defendant swapped pistols with him shortly after the killing if the approach to swap was made by defendant was admissible as tending to prove an effort to suppress testimony. But that this witness afterwards went to defendant to 'rue back because he (witness) had heard about the difficulty and that there was trouble about it, and he (witness) had heard Johnnie Wright had been killed with Aplin's pistol and the details of the conversation with reference to the "ruing back" was inadmissible, irrelevant, and hearsay. The rule is clearly stated in Spicer's Case, 188 Ala. 9–19, 65 South. 972, 975:

"Presumptions or inferences may be, and often are, founded on circumstances which, of themselves, independent of the accusation, would not be ground of crimination. It is largely a question of fact, rather than a question of law, for the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt."

But, where it is clear that they have no relation to the offense charged, they should be excluded. The above rule applies to acts and statements of defendant. The acts and declaration of third persons to and towards defendant are clearly irrelevant.

The questions asked defendant's witness Clark by the state's counsel were within the legitimate bounds of cross-examination.

Other questions raised will probably not arise on another trial.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.